Case 3:20-cv-00110   Document 44   Filed on 11/30/21 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
November 30, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| SRK HOLDINGS, INC., | § § § § § § § § § § § | |
| Plaintiff. | | |
| VS. | | CIVIL ACTION NO. 3:20-cv-00110 |
| SOUTHERN TOWING COMPANY, ET AL., | | |
| Defendants. | | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before me is Plaintiff's Motion for Partial Summary Judgment as to Liability. Dkt. 32. Having carefully reviewed the motion, the response, the reply, and the applicable law, I recommend that the motion be **DENIED**.

## BACKGROUND

Plaintiff SRK Holdings, Inc. ("SRK") asserts a property-damage claim against Defendant Southern Towing Company ("Southern Towing") under general admiralty law following a March 19, 2018 incident in which the tug *Laura Elizabeth*, a vessel owned and operated by Southern Towing, allided with a granite bulkhead owned by SRK, causing damage to the bulkhead.

SRK has filed a motion for partial summary judgment, asking this Court to find that Southern Towing is liable, as a matter of law, for damaging its bulkhead.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017).

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

**A.  OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE**

Before I jump to the merits of the Motion for Partial Summary Judgment, let me quickly address various objections lodged by both sides to the summary judgment evidence.

SRK objects to the following portions of the declaration of Captain James H. Strawn, the individual navigating the *Laura Elizabeth* at the time of the alleged allision:

> 6. As the vessel was crossing Sievers Cut, we experienced strong winds from the north, hitting the port side of the tow. At the time of the incident, a strong flood current began pushing the tow toward the south bank. Although I was aware of and had anticipated the crosswind, I was not aware of the flood current. In an effort to combat the current and crosswind, I angled the head of my tow further to the north. I relied on my familiarity of the area and experience piloting vessels such as the LAURA ELIZABETH to calculate the course angle. I also relied on my charts, radar, and visible landmarks to assess the vessel's position in relation to the shore.

7. As the tow cleared the point on the south bank, I became concerned that we might hit a dock extending out toward the channel ahead of us. At that point, I decided it would be better to attempt to softly land against the south bank rather than potentially crash into the dock, so I reduced speed. The tow was then pushed against the south bank of the Intracoastal, and impacted some large boulders in the water. At the time it landed against the boulders abutting Plaintiff's property, the LAURA ELIZABETH was no longer making forward headway, and was moving sideways with the wind at only approximately 1.5 mph.

8. Despite my best efforts to counteract the force of the crosswind and current, the stern of the starboard rear barge, the STC-2303, was pushed up against the southern bank of the shoreline and eventually came to rest against the boulders abutting the shoreline. I did not expect to dislodge or damage the granite boulders or the bulkhead because the tug was only making 1.5 mph. The soft landing should not have dislodged or caused any damage to the boulders or bulkhead under normal circumstances. Before leaving the area, I did not see any damage to the bulkhead or movement of the granite boulders.

9. At the time of the incident, it was dark, the boulders were not lighted or marked in any way, and there was no reason to know that the boulders protruded into the Intracoastal Waterway. I also did not see the boulders abutting the shoreline until shortly before impact because the boulders were at least partially submerged. The rocks are not on the navigation chart.

10. After the incident we checked the barge and there was no damage on the starboard side. That barge is 54' wide and was drafting 1-1½ feet.

Dkt. 33-1 at 1–2. Without any substantive explanation, SRK casually asserts that the information detailed in Captain Strawn's Declaration "differs from the contemporaneous Vessel Incident Report," which was signed by Captain Strawn. Dkt. 34 at 8. This, according to SRK, renders his Declaration conclusory, self-serving, and not the best evidence of what happened the night of the incident. I have carefully reviewed both Captain Strawn's Declaration and the Vessel Incident Report. Both documents describe the events leading to the allision on March 19, 2018. Although I am admittedly not a Rhodes Scholar, I am unable to discern how the two documents are fundamentally at odds. Even if the two documents are in conflict, I decline to completely ignore Captain Strawn's sworn testimony at this stage of the proceedings. I am required to construe the summary judgment evidence in the light most favorable to the non-moving party, and I will do just that.

Southern Towing also has an evidentiary objection. It complains that I should not consider SRK's Exhibit C (Southern Towing's interrogatory answers) because this evidence was submitted for the first time in SRK's reply brief. SRK attached the interrogatory answers to its reply brief in an effort to rebut Captain Strawn's Declaration, which made its first appearance as an exhibit to Southern Towing's response. In the interest of giving each party a full and fair opportunity to address the issue before me, I overrule Southern Towing's objection. *See Krohn v. Spectrum Gulf Coast, LLC*, No. 3:18-CV-2722-S, 2019 WL 4572833, at *1 n.1 (N.D. Tex. Sept. 19, 2019) (considering reply evidence because it rebuts evidence presented in the response brief); *Lynch v. Union Pac. R.R. Co.*, No. Civ. No. 3:13-CV-2701-L, 2015 WL 6807716, at *1 (N.D. Tex. Nov. 6, 2015) (considering reply evidence "[b]ecause Defendant's reply and related evidence are responsive to arguments raised and evidence relied on by Plaintiff in his summary judgment response").

**B.    SUMMARY JUDGMENT ON LIABILITY IS INAPPROPRIATE**

SRK alleges that Southern Towing's negligent navigation of the *Laura Elizabeth* caused damages to SRK's bulkhead. To establish a negligence claim under admiralty law, SRK must show (1) Southern Towing owed SRK a duty; (2) Southern Towing breached that duty; and (3) Southern Towing's breach proximately caused SRK's alleged damages. *See Mid-S. Towing Co. v. Exmar Lux (In re Mid-S. Towing Co.)*, 418 F.3d 526, 532 (5th Cir. 2005).

As both parties recognize, admiralty courts have developed over the years a series of presumptions and burden-shifting principles that apply to issues that arise within the maritime jurisdiction. *See Archer Daniels Midland, Co. v. M/T Am. Liberty*, --- F. Supp. 3d ---, 2021 WL 2621804, at *7 (E.D. La. June 25, 2021). This case involves two of those presumptions: *The Oregon* rule *and The Pennsylvania* rule.

*The Oregon* rule provides that a moving vessel is presumed to be at fault when it allides with a stationary object. *See The Oregon*, 158 U.S. 186, 197 (1895).

*The Oregon* rule derives from the common-sense observation that moving vessels do not usually allide with stationary objects unless the vessel has been mishandled in some way. *See Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir. 1977). This presumption operates to shift the burden of production and persuasion to the moving vessel. *See Am. Petrofina Pipeline Co. v. M/V Shoko Maru*, 837 F.2d 1324, 1326 (5th Cir. 1988). "The moving vessel may rebut the presumption by showing, with a preponderance of the evidence, that [1] the allision was the fault of the stationary object, [2] that the moving ship acted with reasonable care, or [3] that the allision was an unavoidable accident." *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 503 (5th Cir. 1994).

*The Pennsylvania* rule is a "burden-shifting presumption for causation when a vessel 'at the time of a collision is in actual violation of a statutory rule intended to prevent collisions.'" *Mike Hooks Dredging Co., Inc. v. Marquette Transp. Gulf-Inland, L.L.C.*, 716 F.3d 886, 891 (5th Cir. 2013) (quoting *The Pennsylvania*, 86 U.S. 125, 136 (1873)). "The burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." *The Pennsylvania*, 86 U.S. at 136. "The rule thus creates a presumption that one who violates a regulation intended to prevent collisions will be deemed responsible." *Tokio Marine & Fire Ins. Co. v. Flora MV*, 235 F.3d 963, 966 (5th Cir. 2001). The presumption, however, is rebuttable and "applies only to violations of statutes that delineate a clear legal duty." *Id.*

SRK argues that summary judgment is appropriate on liability because Southern Towing is presumed at fault under *The Oregon* rule, and causation is satisfied in accordance with *The Pennsylvania* rule because of the *Laura Elizabeth's* alleged violations of several Inland Rules of Navigation. *See* 33 U.S.C. §§ 2001–73.

Southern Towing counters that there are a host of reasons why summary judgment on liability is inappropriate. These include: (1) the area where the allision

occurred was not adequately lit; (2) the boulders the *Laura Elizabeth* crashed into were unpermitted and protruding into the Intracoastal Waterway; and (3) Captain Strawn acted reasonably under the circumstances. As Southern Towing succinctly states:

> Here, the granite boulders that [SRK] knowingly placed beyond its property line without the required authorization, were unlit, below the water, and not visible to Captain Strawn. Further, because the granite boulders were unmarked and unpermitted, Captain Strawn did not know about their location prior to transiting the area. [SRK's] unpermitted boulders were also an obstruction in fact to navigation by being placed into navigable waters.
> . . .
> Captain Strawn attempted to overcome the strong winds and unexpected flood current by changing his angle of approach to avoid the south bank of the [Intracoastal Waterway]. Upon seeing a dock just past [SRK's] property, he decided to attempt to make a soft landing along the south bank rather than risk alliding with the dock. As Captain Strawn slowed the tow, the winds and current eventually forced his tow into the umarked, and hidden, granite boulders.

Dkt. 33 at 14–15. Make no mistake: SRK strongly disputes Southern Towing's version of events.

In reviewing the summary judgment papers, I must keep in mind that *The Oregon* rule and *The Pennsylvania* rule are both *rebuttable* presumptions. The presumptions serve only to permit the trier of fact, "*in the absence of other evidence*[,] . . . [to] have a solid, perhaps as a practical matter an unshakable, basis" to determine whether a party was negligent or whether the party's actions proximately caused an accident. *Rodi Yachts, Inc. v. Nat'l Marine, Inc.*, 984 F.2d 880, 887 (7th Cir. 1993) (emphasis added). These presumptions, however, have limited applicability in the present case because "there *is* other evidence." *Id.* As the Fifth Circuit has cogently explained: "Evidentiary presumptions are designed to fill a factual vacuum. Once evidence is presented, presumptions become superfluous because the parties have introduced evidence to dispel the mysteries

that gave rise to the presumptions." *In re Mid-S. Towing Co.*, 418 F.3d at 531 (cleaned up).

In this case, the parties have presented plenty of evidence at the summary judgment stage that helps shed light on the events leading to the *Laura Elizabeth's* allision with SRK's granite bulkhead. To state the obvious, the parties fundamentally disagree on what that evidence establishes. A few examples: Southern Towing contends the evidence shows that the allision was the fault of a stationary object (the granite bulkhead); SRK disagrees. Southern Towing claims that the summary judgment record demonstrates that its actions on the evening of March 19, 2008 were reasonable; SRK disagrees. SRK maintains that Southern Towing violated several Inland Navigation Rules in causing the allision with the bulkhead; Southern Towing disagrees.

As I have indicated previously, I am extremely reluctant to decide the outcome of an admiralty case based solely on rebuttable presumptions, especially when, as here, a substantial evidentiary record exists. *See Reed v. Maersk Line, Ltd.*, No. 3:19-CV-00238, 2021 WL 1845162, at *5 (S.D. Tex. May 7, 2021). A "singular focus on evidentiary presumptions elevates form over substance [and] common sense." *Impala Terminals Burnside LLC v. Marquette Transp. Co., LLC*, CV 19-12584, 2021 WL 1123566, at *9 (E.D. La. Mar. 24, 2021). "That both sides submit competing evidence relevant to fault and causation renders indulging presumptions unnecessary. . . . On this fulsome record, the evidentiary presumptions are superfluous; there is simply no factual void to fill." *Id*. There are genuine issues of material fact—namely, whether Southern Towing's navigation of the *Laura Elizabeth* on the evening of March 19, 2018 was negligent and caused damages to SRK's bulkhead—that preclude the entry of a partial summary judgment on liability. That determination will need to be made after both sides are given a full and fair opportunity to present witnesses and evidence at a bench trial. Accordingly, I recommend that the Motion for Partial Summary Judgment be **DENIED**.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Partial Summary Judgment as to Liability (Dkt. 32.) be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 30th day of November 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE